STATE OF NEBRASKA, APPELLEE, V. KENNETH L. MILENKOVICH, APPELLANT.

458 N.W.2d 747

Filed August 3, 1990.   No. 89-1196.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from the district court's judgment overruling the defendant's plea in bar, which alleged that the defendant was previously tried for and acquitted of a lesser-included offense of the second degree assault charged in the district court proceeding. We affirm.

The record shows the following: On January 12, 1989, Steven Smith was working as a bouncer at a Lincoln bar. Smith and the defendant had a confrontation during which the defendant allegedly reached through the window of his van and cut Smith with a screwdriver. During the confrontation, the defendant allegedly threatened to run over Smith with his van. Shortly thereafter, the defendant allegedly attempted to run over Smith and another bar employee as they were standing on the sidewalk in front of a parking lot across the street from the bar.

On January 12, 1989, in the county court for Lancaster County, the defendant was charged with two misdemeanor counts of attempted second degree assault, in violation of Neb. Rev. Stat. §§ 28-201 and 28-309(1) (Reissue 1989). These counts were apparently intended to prosecute the defendant for his attempt to run over the two bar employees with his van. The complaint alleged in the first count that on January 12, in Lancaster County, the defendant did

> intentionally engage in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of Second Degree Assault, to-wit: did then and there intentionally or knowingly cause bodily injury to Steven Smith with a dangerous instrument . . . .

The second count was identical, except Eugene Konken, the other bar employee, was specified as the victim.

Although the record does not contain a complaint in the county court for the felony assault charge, it does reflect that on March 23, 1989, a preliminary hearing was held in the county court on the felony assault charge. At that hearing, Smith testified that the defendant cut him with a screwdriver. On March 27, an information was filed in district court charging the defendant with second degree assault under § 28-309(1), a Class IV felony. The information stated that on January 12, 1989, in Lancaster County, the defendant did "intentionally or knowingly cause bodily injury to Steven Smith with a dangerous instrument, to-wit: a screwdriver." On March 29, Milenkovich entered a plea of not guilty to the second degree assault charge in the district court proceeding.

Trial on the county court misdemeanor charges commenced on April 11, 1989. On April 17, the county court accepted the jury's verdict acquitting the defendant on both counts of attempted second degree assault.

On May 30, 1989, the district court allowed the defendant to withdraw his not guilty plea to the felony second degree assault charge and to substitute a plea in bar. The plea in bar stated that the defendant was previously tried for and acquitted of the same offense in the county court misdemeanor proceeding. A hearing on the plea in bar was held June 12, and the district court overruled the plea in bar on August 2. The defendant timely perfected this appeal.

The defendant appeals directly from the ruling on the plea in bar. He assigns error to the district court's order overruling the plea in bar.

The first issue we must address is whether this court has jurisdiction to hear an immediate appeal from an order overruling a plea in bar filed pursuant to Neb. Rev. Stat. § 29-1817 (Reissue 1989). The plea was based upon a claim that the prosecution violates the double jeopardy provisions of the U.S. and Nebraska Constitutions. The 5th amendment to the U.S. Constitution, made applicable to the states through the 14th amendment, provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

Neb. Const. art I., § 12, provides: "No person shall . . . be twice put in jeopardy for the same offense."

The U.S. Supreme Court has stated that the fifth amendment right not to be "twice put in jeopardy" for the same offense includes the right not to be twice put on trial for the same offense. In *Abney v. United States*, 431 U.S. 651, 660-62, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977), the Court stated:

> [T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment . . . . However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense. . . . [T]he guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. . . . Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy . . . his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

(Emphasis in original.) See, also, *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 102 S. Ct. 3081, 73 L. Ed. 2d 754 (1982) (reiterating the statement in *Abney* that an adverse ruling on a double jeopardy claim must be reviewable before trial); *United States v. MacDonald*, 435 U.S. 850, 98 S. Ct. 1547, 56

L. Ed. 2d 18 (1978).

*Abney* based its ultimate holding on its interpretation of 28 U.S.C. § 1291 (1976), which provided appellate jurisdiction over "final decisions." The Court applied the "collateral order" exception and found that an adverse determination on a claim of double jeopardy came within the exception. Under the collateral order exception, a decision is "final" within § 1291 if (1) the decision constitutes "a complete, formal, and, in the trial court, final rejection" of the claim, (2) the claim "is collateral to, and separable from, the principal issue" to be tried, and (3) the claimant's rights would be significantly undermined if appellate review were postponed. See *Abney, supra* at 431 U.S. at 659. See, also, *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949). The above-cited language from *Abney* was part of the Court's analysis for the third prong of the test.

Because of the statutory basis for the opinion in *Abney*, several state courts have determined that *Abney* does not promulgate a federal constitutional requirement of immediate review of double jeopardy claims. See, *Burleson v. State*, 552 So. 2d 186 (Ala. Crim. App. 1989); *State v. Joseph*, 92 N.C. App. 203, 374 S.E.2d 132 (1988), *cert. denied* 324 N.C. 115, 377 S.E.2d 241 (1989); *State v. Miller*, 289 S.C. 426, 346 S.E.2d 705 (1986); *People ex rel. Mosley v. Carey*, 74 Ill. 2d 527, 387 N.E.2d 325 (1979), *cert. denied* 444 U.S. 940, 100 S. Ct. 292, 62 L. Ed. 2d 306; *State v. Fisher*, 2 Kan. App. 2d 353, 579 P.2d 167 (1978).

Other courts, citing *Abney*, have permitted immediate review of double jeopardy claims. See, *Griffin v. State*, 545 So. 2d 729 (Miss. 1989); *State v. King*, 131 N.H. 173, 551 A.2d 973 (1988); *Com. v. Hall*, 371 Pa. Super. 333, 538 A.2d 43 (1988); *State v. Sanchez*, 532 A.2d 956 (R.I. 1987); *Com. v. Chatfield-Taylor*, 399 Mass. 1, 502 N.E.2d 512 (1987); *State v. Choate*, 151 Ariz. 57, 725 P.2d 764 (1986); *State v. Jenich*, 94 Wis. 2d 74, 288 N.W.2d 114 (1980); *County Ct. v. Ruth*, 194 Colo. 352, 575 P.2d 1 (1977); *Gray v. State*, 36 Md. App. 708, 375 A.2d 31 (1977). See, also, *Neal v. State*, 272 Md. 323, 322 A.2d 887 (1974) (Constitution requires immediate appeal).

Some courts have limited the procedural means of obtaining

immediate review of double jeopardy claims. See, *Markiewicz v. Black*, 138 Colo. 128, 330 P.2d 539 (1958) (review through writ of prohibition); *Ex Parte Robinson*, 641 S.W.2d 552 (Tex. Crim. App. 1982); *Harden v. State*, 460 So. 2d 1194 (Miss. 1984) (review through writ of habeas corpus); *State ex rel. Wark v. Freerksen*, 84 Or. App. 90, 733 P.2d 100 (1987) (review through writ of mandamus).

In dissenting from the denial of certiorari in the case of *Spradling v. State*, 634 S.W.2d 89 (Tex. App. 1982), *cert. denied* 455 U.S. 971, 973, 102 S. Ct. 1482, 71 L. Ed. 2d 686, Justice Brennan, joined by Justice Marshall, stated:

> It is true that the Court had no need to reach the constitutional question presented in the instant case when it decided *Abney*, but the Court's recognition in *Abney* that double jeopardy claims not considered prior to trial are rendered, in significant part, moot surely has significant constitutional overtones. We have never held that the Federal Constitution requires that a State provide appellate review. But once such review is provided, it may not be denied arbitrarily without violating the Equal Protection Clause. [Citations omitted.] Fundamental precepts of due process require a right to be heard "at a meaningful time" before suffering a grievous loss. [Citations omitted.] Thus, there is surely a good deal of force to petitioner's argument that, if the State provides for appeals to protect other constitutional rights, it runs afoul of the Federal Constitution when it fails to give the same meaningful consideration to a defendant asserting his right not to be subjected to a second trial for the same offense.

We agree that a defendant must be granted the opportunity to raise a claim of double jeopardy prior to being subjected to the second trial. Section 29-1817 provides:

> The accused may then offer a plea in bar to the indictment that he has before had judgment of acquittal, or been convicted, or been pardoned for the same offense; and to this plea the county attorney may reply that there is no record of such acquittal or conviction, or that there has been no pardon. On the trial of such issue to the court or

> to a jury . . . the accused must produce the record of such conviction or acquittal, or the pardon, and prove that he is the same person charged in the record or mentioned in the pardon; and shall be permitted to adduce such other evidence as may be necessary to establish the identity of the offense.

We need not reach the issue as to whether an immediate appeal from a denial of a plea in bar is constitutionally mandated, because such an order is a final order as defined in Neb. Rev. Stat. § 25-1902 (Reissue 1989), which states:

> An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding . . . is a final order which may be vacated, modified or reversed, as provided in this chapter.

As the *Abney* decision points out, there is no question that a determination of a nonfrivolous double jeopardy claim affects the substantial right not to be tried twice for the same offense.

The only issue is whether a ruling on a plea in bar is a ruling in a "special proceeding" within the language of § 25-1902. In *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980), we held that a determination that an accused was incompetent to stand trial in a proceeding under Neb. Rev. Stat. § 29-1823 (Reissue 1989) was a final order under the special proceeding provision of § 25-1902. We stated: " ' "Where the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special . . . ." ' [Citation omitted.]" *Guatney, supra* at 506, 299 N.W.2d at 542. We also stated: " 'A special proceeding may be said to include every special statutory remedy which is not in itself an action. . . .' " *Id*. Section 29-1817 authorizes a defendant to bring a special application to a court to enforce the defendant's constitutional right to avoid double jeopardy. The application is not made as a step in determining the merits of any issue in the criminal prosecution itself. Also, § 29-1817 does not create an independent action. As the analysis in *Guatney, supra* at 506, 299 N.W.2d at 542, noted:

> A reading of § 29-1823 clearly establishes that it is a "statutory remedy which is not itself an action." . . .

> Before one may be examined pursuant to § 29-1823, one must be charged with a crime and awaiting trial. One cannot be subjected to the provisions of § 29-1823 standing alone.

The same analysis applies to § 29-1817. We therefore conclude that a denial of a plea in bar is a final order as defined in § 25-1902 and that this court has jurisdiction over the appeal in this case.

The next issue is whether the defendant's trial in the district court on the second degree assault felony charge would violate his right not to be twice put in jeopardy for the same offense. Defendant contends that the broad language of the attempted misdemeanor assault charge, which did not specify the dangerous instrument or the specific location of the attempted assault, combined with the admission at the misdemeanor trial of Smith's statement that defendant attempted to cut him with a screwdriver, put him in jeopardy of being convicted of the attempted assault charge based upon the confrontation in front of the bar.

We have stated that

> one may go outside the information itself to determine what charge the conviction was based upon in order to raise it as a bar to a subsequent prosecution. [Citations omitted.]
>
> "An indictment or information alone need not be full protection against double jeopardy because a defendant may allege and prove facts outside the record in support of a plea of former adjudication. [Citation omitted.] The remedy of a bill of particulars is available to assist a defendant in preparing his defense and to protect him against a second prosecution for the same offense. [Citation omitted.]"

*State v. Piskorski*, 218 Neb. 543, 548, 357 N.W.2d 206, 210-11 (1984). This language is in accord with the language of § 29-1817 which provides that a defendant may present evidence outside the record to prove the identity of the offenses. Consequently, a court may consider evidence beyond the information in determining whether a prosecution violates the double jeopardy clause. Looking beyond the complaint in the

misdemeanor county court proceeding, it is clear that the appellant was acquitted of a different charge, predicated upon a different event, than is sought to be prosecuted in the district court.

Trial on the county court misdemeanor charges commenced on April 11, 1989. A full record of that trial, including opening statements and final arguments, contained in a 355-page bill of exceptions, is before us. The prosecution did not refer to the screwdriver incident in opening statements or closing arguments and presented the case on the theory that the defendant attempted to assault the two bar employees with his van. The prosecution specifically related to the jury that the defendant's van was the "dangerous instrument" referred to in the charges. As part of its case in chief, the prosecution elicited the following evidence from Smith about the assault with the screwdriver:

> Q Did Mr. Milenkovich do anything towards you before he moved his van?
>
> A He attempted to cut me with a screwdriver.
>
> Q Did you see the screwdriver?
>
> A Yes, I did.

The prosecution did not elicit further evidence of the assault, nor did the prosecution ever refer to the screwdriver assault at any other time during the trial.

In closing arguments, the prosecution stated:

> The only thing really that seems in contention here is whether or not Mr. Milenkovich attempted to cause bodily injury to those two people with a dangerous instrument. The State submits to you that the State has proven that on that date in Lancaster County, Nebraska on both of those individuals, Mr. Milenkovich did attempt to cause them bodily injury with a dangerous instrument. That dangerous instrument was his van, his 1976— '77 blue Chevy van.

With reference to the jury instructions in closing arguments, the prosecution stated:

> [The jury instructions are] going to set out a lot of things for you. Go into definitions. For example, what is a dangerous instrument. A dangerous instrument is defined

as being any object which because of its nature and the matter [sic] and intention of its use, is capable of inflicting bodily injury. And the State submits to you that that van when it is driven by Mr. Milenkovich and was headed towards Steve Smith and Gene Konken was indeed a dangerous instrument.

The prosecution ended closing arguments with the statement: "Mr. Milenkovich did indeed attempt to assault Mr. Konken and Mr. Smith with a dangerous instrument and cause bodily injury and that dangerous instrument was his Chevy van."

In his opening statement, defense counsel related to the jury that the defendant kept a screwdriver in his van because he needed a screwdriver to spark the van's ignition. Defense counsel further related that the defendant "swung his screwdriver at the— at the bouncer as he was coming in [the van] and he nicked him . . . ." During the trial, the defense elicited testimony from the defendant that the defendant needed a screwdriver to start his van and that he kept a screwdriver in the van. The defendant testified that he was holding the screwdriver when the bouncer attacked him through the window of defendant's van while defendant was parked in front of the bar. The defendant testified that he did not swing at the bouncer with the screwdriver but, instead, was putting up his hands to protect himself and that he in fact tried to avoid hitting the bouncer with the end of the screwdriver. Defense counsel fully developed and addressed all the facts relating to the incident that night and did not emphasize the incident with the screwdriver. In his closing argument, defense counsel argued, "In order to find Mr. Milenkovich guilty of attempted second degree assault, what you will have to find beyond a reasonable doubt is that it was his intention to run over those two bouncers." Defense counsel did not refer to the screwdriver in his closing argument and began the argument with a discussion of the facts that took place across the street from the bar, when the defendant allegedly attempted to run over the bar employees with his van.

The jury instructions referred only to the term "dangerous instrument" in instructing on the law of assault, and did not specifically mention either the van or the screwdriver. The

defendant was acquitted in the county court on the two counts of attempted second degree assault.

In reviewing the record of the trial as a whole, we determine that the defendant was not in danger of being convicted of the attempted assault by virtue of the incident with the screwdriver. There is no question that the prosecution submitted the case solely on the theory that the defendant attempted to assault the two bar employees with his van. The jury could not ignore the arguments both of counsel for the State and for defendant and decide the case on a theory of guilt wholly unrelated to the theory on which the case was presented. In essence, the arguments and conduct of both counsel in the case treated the misdemeanor charges as ones involving the van and tried the case as one concerning the defendant's attempt to assault the victims with a dangerous instrument, a van.

Defendant's counsel introduced the screwdriver incident in his opening statement and addressed it during trial either in an effort to obfuscate the issue in the misdemeanor trial or to prepare the defense he is now making.

Certainly, this appeal could have been easily avoided by adding a reference to the van in the county court charges or in the jury instructions. On the other hand, the defendant determined not to seek a bill of particulars in the misdemeanor case, as a matter of strategy, and, as evidenced from the record, the defendant was fully aware of the different subject matters of the prosecutions in the county and district courts. The defendant was not in any danger of being convicted in the county court of an attempted assault on the basis of the screwdriver incident.

The order of the district court overruling defendant's plea in bar is affirmed.

AFFIRMED.