STATE OF NEBRASKA, APPELLEE, V.
REGINA A. JACKSON, APPELLANT.
742 N.W.2d 751

Filed December 21, 2007.    No. S-07-084.

Thomas C. Riley, Douglas County Public Defender, and Mark A. Mendenhall for appellant.

Paul D. Kratz, Omaha City Attorney, Martin J. Conboy III, Omaha City Prosecutor, and J. Michael Tesar for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The question presented in this appeal is whether a mistrial resulting from the recusal of the trial judge during a bench trial bars retrial under the double jeopardy provisions of the state and federal Constitutions. The issue turns on whether the record reflects a "manifest necessity" for terminating the trial. We conclude that it does not.

## BACKGROUND

Regina A. Jackson was charged in the county court for Douglas County with assault and battery, disorderly conduct, and driving under the influence, all misdemeanor offenses defined by the Omaha Municipal Code. She entered pleas of not guilty to each charge, and the case was scheduled for trial.

At the beginning of the bench trial, immediately after both counsel had entered their appearances, the trial judge stated: "Before we go any further on this I want everybody here to know that I've seen [Jackson] working in the clerk's office. I don't know her in anyway [sic]. I mean I just see her and say hi. You want me to recuse myself?" Jackson responded in the negative, and neither counsel requested recusal. The prosecutor indicated that she was willing to proceed.

The first witness was the victim of the alleged assault. After her testimony was concluded, the judge asked to see counsel in chambers, where he stated:

> The more I think about this case the more I feel it would be appropriate to appoint . . . an outside judge. I mean I should recuse myself from hearing any further evidence in this matter. We are going to check with the presiding judge and see when we could get an outside judge to come in and hear this case and we will schedule it. We will let you know this afternoon.

Later the same day, counsel and Jackson appeared before the judge, who noted for the record that he had recused himself "in the middle of the trial" and that he would enter a mistrial on his own motion. The prosecutor responded, "Manifest necessity," and the judge said, "Manifest necessity and continue this matter until this afternoon and declare a mistrial." At that point, Jackson's counsel objected, noting that a witness had testified

and jeopardy had attached and that Jackson was present and prepared to proceed. The judge noted the objection, but stated, "Due to manifest necessity this matter is declared a mistrial." The court entered a written order to this effect on the same day, and the trial was rescheduled.

Jackson subsequently filed a plea in bar, asserting that retrial would violate her constitutional right not to be subjected to double jeopardy. The plea in bar was denied, and Jackson appealed to the district court for Douglas County, which affirmed the judgment of the county court. Jackson perfected this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENT OF ERROR

Jackson assigns that the district court erred in affirming the denial of her plea in bar.

## STANDARD OF REVIEW

The overruling of a plea in bar raising a double jeopardy claim is a final order from which an appeal may be taken.[2] Issues regarding the grant or denial of a plea in bar are questions of law.[3] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[4]

## ANALYSIS

The Fifth Amendment to the U.S. Constitution and article I, § 12, of the Nebraska Constitution protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.[5] The protection

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

[2] See, *State v. Woodfork*, 239 Neb. 720, 478 N.W.2d 248 (1991), *overruled on other grounds, State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993); *State v. Smith*, 3 Neb. App. 564, 529 N.W.2d 116 (1995).

[3] *State v. Humbert*, 272 Neb. 428, 722 N.W.2d 71 (2006).

[4] *Id.*

[5] See, *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005); *State v. Rhea*, 262 Neb. 886, 636 N.W.2d 364 (2001).

provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution.[6] Jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.[7] However, the constitutional protection against double jeopardy does not mean that every time a defendant is put to trial before a competent tribunal, he is entitled to go free if the trial fails to end in a final judgment.[8] Where jeopardy has attached in a prior criminal proceeding which does not result in final judgment and the State subsequently seeks to retry the defendant on the same charge, the constitutional protection against double jeopardy bars the retrial only if the prior proceeding terminated jeopardy.[9]

▌▌▌ In this case, jeopardy attached when the court heard testimony. The mistrial declared on the court's own motion over Jackson's objection prevented a final judgment. However, a mistrial does not automatically terminate jeopardy, because "a trial can be discontinued when particular circumstances manifest a necessity for doing so, and when failure to discontinue would defeat the ends of justice."[10] Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant.[11]

The U.S. Supreme Court has held that while "[t]he words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden[,] . . . those words do not describe a standard that can be applied mechanically or without attention

---

[6] *State v. Marshall, supra* note 5; *State v. Winkler,* 266 Neb. 155, 663 N.W.2d 102 (2003); *State v. Nelson,* 262 Neb. 896, 636 N.W.2d 620 (2001).

[7] *State v. Vasquez,* 271 Neb. 906, 716 N.W.2d 443 (2006).

[8] *Wade v. Hunter,* 336 U.S. 684, 69 S. Ct. 834, 93 L. Ed. 974 (1949); *State v. Marshall, supra* note 5; *State v. Bostwick,* 222 Neb. 631, 385 N.W.2d 906 (1986).

[9] *State v. Marshall, supra* note 5. See *State v. Bostwick, supra* note 8.

[10] *Wade v. Hunter, supra* note 8, 336 U.S. at 690.

[11] *Arizona v. Washington,* 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978); *State v. Marshall, supra* note 5.

to the particular problem confronting the trial judge."[12] The Court has also recognized that "there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate."[13] The Court noted that "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused."[14] Conversely, "[a]t the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial."[15] In order to protect the interest of a criminal defendant in not being subjected to double jeopardy, "reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial."[16]

This court has held that manifest necessity for a mistrial was established in cases where the potential bias of a juror is discovered during trial.[17] However, we have not previously addressed the question of whether manifest necessity for a mistrial is established by the recusal of a judge during a bench trial. Some courts have held that a mistrial was manifestly necessary when a judge declared an inability to disregard evidence which had been ruled inadmissible in the bench trial.[18] Manifest necessity for a mistrial has also been found where the judge conducting a bench trial recognizes and admits having a bias which would affect his or her objectivity.[19] As one court noted: "When judges doubt their own ability to adjudicate impartially, they should

---

[12] *Arizona v. Washington, supra* note 11, 434 U.S. at 505-06.

[13] *Id.*, 434 U.S. at 506

[14] *Id.*, 434 U.S. at 508.

[15] *Id.*, 434 U.S. at 509.

[16] *Id.*, 434 U.S. at 514.

[17] *State v. Marshall, supra* note 5; *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979).

[18] *Com. v. Morris*, 773 A.2d 192 (Pa. Super. 2001); *Bailey v. State*, 219 Ga. App. 258, 465 S.E.2d 284 (1995).

[19] *Com. v. Leister*, 712 A.2d 332 (Pa. Super. 1998); *Com. v. Smith*, 321 Pa. Super. 51, 467 A.2d 888 (1983).

recuse themselves. . . . Such an inability to be objective creates a manifest necessity for the declaration of a mistrial, particularly when a judge must exert the broad discretion that a bench trial demands."[20] Another court held that manifest necessity exists for a mistrial where, during a bench trial, "the judge correctly decides he must recuse himself, and there is no evidence of bad faith conduct by the judge."[21]

In *Arizona v. Washington*,[22] the Court held that a specific finding of "manifest necessity" is not necessary to prevent termination of jeopardy if the record provides sufficient justification for the mistrial ruling. By the same reasoning, a specific finding of "manifest necessity" by the trial judge will not prevent termination of jeopardy unless the facts and circumstances upon which the finding is based are apparent from the record.

The record in this case is insufficient for us to determine whether or not the mistrial was justified by manifest necessity. Although the trial judge did not refer to any specific provision of the Nebraska Code of Judicial Conduct as the basis for his recusal, canon 3 of the code governs judicial disqualification. It provides that a judge "shall not participate in any proceeding in which the judge's impartiality reasonably might be questioned, *including but not limited to* instances where . . . [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding."[23] In this case, the trial judge did not specifically state that he had formed a personal bias or prejudice, or that he had knowledge of any disputed evidentiary facts concerning the proceeding. The judge stated only that he had "seen [Jackson] working in the clerk's office" and that he had greeted her by saying "hi." The record does not disclose when or how frequently this occurred. It is not clear from the record whether Jackson was a court employee; the county judge who heard the plea in bar noted that he knew her as "an employee

---

[20] *Com. v. Leister, supra* note 19, 712 A.2d at 335 (citations omitted).

[21] *State v. Graham*, 91 Wash. App. 663, 665, 960 P.2d 457, 458 (1998).

[22] *Arizona v. Washington, supra* note 11.

[23] Neb. Code of Jud. Cond., Canon 3E(1) (rev. 2000) (emphasis supplied).

of the Douglas county clerk's office." The trial judge did not explain why, after making his initial disclosure and beginning the trial with the consent of both parties, he concluded that "it would be appropriate to appoint . . . an outside judge" to hear the case. Without a more complete factual record, we cannot make a determination of whether the trial judge's impartiality might be questioned on the basis of his personal acquaintance with Jackson prior to the trial.

We have no reason to doubt that the trial judge gave careful consideration to his decision to recuse himself and declare a mistrial. The difficulty lies in the fact that we cannot determine whether he exercised sound discretion in doing so because of the inadequacy of the record as to the underlying reasons for the decision. Because of the constitutional implications, the State bears the burden of demonstrating the manifest necessity of a mistrial declared over the objection of the defendant in a criminal case.[24] The State cannot meet this burden by simply requesting the court to make a general finding of manifest necessity, as it did here, without a factual record to support the finding. Where the reason for a mistrial is not clear from the record, the uncertainty with respect to manifest necessity must be resolved in favor of the defendant.[25]

## CONCLUSION

For these reasons, we conclude that the State did not meet its burden of demonstrating the manifest necessity of the mistrial and that therefore, the declaration of the mistrial terminated jeopardy. Retrial would violate Jackson's constitutional right not to be placed twice in jeopardy, and, accordingly, her plea in bar should have been sustained. We therefore reverse the judgment of the district court and remand the cause to that court with directions to reverse the order of the county court's overruling Jackson's plea in bar and remand the matter to the county court with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[24] *Arizona v. Washington, supra* note 11.

[25] See, *West Valley City v. Patten*, 981 P.2d 420 (Utah App. 1999); *Allen v. State*, 656 S.W.2d 592 (Tex. App. 1983).