278 Neb. 841 (2009)
STATE OF NEBRASKA, APPELLEE,
v.
LARRY WILLIAMS, APPELLANT.
No. S-08-1220.
Supreme Court of Nebraska.
Filed November 6, 2009.
John H. Marsh, Deputy Buffalo County Public Defender, of Knapp, Fangmeyer, Aschwege, Besse & Marsh, P.C., for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
In this criminal proceeding, the district court declared a mistrial after the jury reported that it was unable to reach a unanimous verdict. Larry Williams, the defendant, filed a plea in bar alleging that further prosecution would subject him to double jeopardy in violation of his constitutional rights. The district court overruled the plea in bar, and Williams appealed. The Nebraska Court of Appeals dismissed the appeal for lack of jurisdiction. We granted Williams' petition for further review in order to address apparent tension between our holdings in State v. Jackson[1] and State v. Rubio[2] with respect to (1) whether a nonfrivolous double jeopardy claim following the declaration of a mistrial may be raised by a plea in bar and (2) if so, whether an order overruling such a plea in bar is final and appealable.

I. BACKGROUND
In June 2007, Williams was charged by amended information with one count of sexual assault of a child and six counts of first degree sexual assault. A jury trial commenced on October 1. During the second day of deliberations, the jury reported that it was deadlocked and unable to reach a verdict. The judge who had presided over the trial was unavailable, so another judge met with the jury. Neither Williams, his counsel, nor the prosecutor was present when the following colloquy occurred:
THE COURT: . . . Without telling me anything with regard to the division of how the jury is divided or the way that it is divided, if the Court were to ask you to continue deliberations, do you feel that there is a reasonable probability that you might yet be able to arrive at a verdict?
PRESIDING JUROR: No.
THE COURT: Is there anything further the Court could do to assist the jury on arriving at a verdict in your opinion, for instance, reading further jury instructions, rereading testimony, anything like that?
PRESIDING JUROR: Maybe some rereading of some testimony might help. I don't know.
THE COURT: Do you specifically have any idea what testimony?
PRESIDING JUROR: It would be the testimony of the defendant  not the defendant, the victim, may help, but I don't know.
THE COURT: You can't be certain of that, that a rereading will help?
PRESIDING JUROR: No.
THE COURT: I'll tell you the rereading of testimony in these circumstances is unusual and typically is not something the Court often chooses to do. There's a desire not to reemphasi[ze] any of the testimony of a particular witness.
You have now been deliberating a period of approximately nine hours; is that correct?
PRESIDING JUROR: Seven and a half maybe. We started at 11:30 yesterday until 5, so five and a half and then two today  not quite two.
THE COURT: Under the circumstances, I'm going to have to declare a mistrial, release the jury. Thank you very much for your service.
On November 16, 2007, Williams filed a "Plea in Abatement," alleging there was "a defect in the record shown by facts extrinsic thereto" in that a mistrial was declared without the presence of him or his counsel. The plea requested that the prosecution thus be abated. The district court overruled the plea, and Williams appealed. On August 4, 2008, in case No. A-08-067, the Court of Appeals summarily dismissed, finding that the denial of a plea in abatement is not a final, appealable order.
After remand from the Court of Appeals, Williams filed a plea in bar in the district court. Williams' plea in bar stated that he had "been placed in jeopardy" by a trial, that a mistrial had been declared, and that because the "mistrial was in error and an abuse of discretion," a second prosecution was "barred" and the matter should be dismissed. The district court overruled the plea in bar, finding that the declaration of the mistrial was supported by manifest necessity.
Williams again appealed to the Court of Appeals, and, on January 20, 2009, the court summarily dismissed the appeal with the following minute entry:
Appeal dismissed. See Neb. Ct. R. App. P. § 2-107(A)(2). Appellant's plea in bar does not meet requirements of Neb. Rev. Stat. § 29-1817 (Reissue 2008) and does not allege further prosecution barred by the double jeopardy clauses of the federal or state constitutions. See State v. Jackson, 274 Neb. 724, 742 N.W.2d 751 (2007).
We granted Williams' petition for further review.

II. ASSIGNMENTS OF ERROR
In his petition for further review, Williams assigns, restated and consolidated, that the Court of Appeals erred in finding that his plea in bar was not a final, appealable order. In the underlying appeal, Williams assigns, restated and consolidated, that the trial court erred in failing to find that a retrial was barred by the principles of double jeopardy.

III. STANDARD OF REVIEW
Issues regarding the grant or denial of a plea in bar are questions of law.[3] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[4]
A trial court's determination that a jury is deadlocked and thus a manifest necessity exists for discharging the jury and declaring a mistrial is reviewed for an abuse of discretion.[5]

IV. ANALYSIS

1. Appellate Jurisdiction

(a) Scope of Double Jeopardy Clause
[1,2] The Double Jeopardy Clauses of both the federal and the Nebraska Constitutions protect a defendant against a second prosecution for the same offense after an acquittal or conviction.[6] Stated another way, "[a] State may not put a defendant in jeopardy twice for the same offense."[7] In Arizona v. Washington[8] the U.S. Supreme Court explained why the declaration of a mistrial in a criminal prosecution may trigger the constitutional protection afforded by the Double Jeopardy Clause:
Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.[9]
[3-5] In a case tried to a jury, jeopardy attaches when the jury is impaneled and sworn.[10] However, a mistrial does not automatically terminate jeopardy, because "'a trial can be discontinued when particular circumstances manifest a necessity for doing so, and when failure to discontinue would defeat the ends of justice.'"[11] Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant.[12]

(b) Remedy and Review
[6] Neb. Rev. Stat. § 29-1817 (Reissue 2008) provides: "The accused may . . . offer a plea in bar to the indictment that he has before had judgment of acquittal, or been convicted, or been pardoned for the same offense . . . ." In State v. Milenkovich,[13] we held that the denial of a plea in bar which asserted an acquittal as the bar to subsequent prosecution for the same offense was a final, appealable order. In reaching that conclusion, we relied upon the holding of the U.S. Supreme Court in Abney v. United States[14] that "rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence." The Abney Court reasoned that the protections of the Double Jeopardy Clause would necessarily be lost if an accused were required to stand trial a second time before seeking appellate review of a claim that the second trial constituted double jeopardy. In the context of a final order as defined by Neb. Rev. Stat. § 25-1902 (Reissue 1989), we concluded in State v. Milenkovich[15] that based upon Abney, "there is no question that a determination of a nonfrivolous double jeopardy claim affects the substan tial right not to be tried twice for the same offense." We then concluded that a ruling on a plea in bar is made in a "special proceeding," because § 29-1817 "authorizes a defendant to bring a special application to a court to enforce the defendant's constitutional right to avoid double jeopardy."[16]
In State v. Lynch,[17] we applied the Milenkovich rationale to a prisoner's claim that his criminal prosecution for escape was barred by a prior administrative disciplinary proceeding in which the evidence was found insufficient to establish his involvement in the escape. Rejecting the State's argument that we lacked jurisdiction to review the denial of the plea in bar prior to conclusion of the criminal case, we reasoned that because the plea in bar raised a double jeopardy claim, it was final and appealable.
Two more recent decisions of this court further frame the jurisdictional issue in this case. In State v. Rubio,[18] a defendant charged with drug-related offenses in state court filed a plea in bar. He asserted that the State was precluded from prosecuting him because federal charges arising out of the same activity had been voluntarily dismissed after he successfully sought suppression of certain evidence in federal court. The district court denied the plea in bar, and the Nebraska Court of Appeals affirmed. On further review, we framed the issue as "whether a plea in bar is the proper procedural device with which to raise a challenge based on the Supremacy Clause of the U.S. Constitution."[19] We concluded that we lacked jurisdiction because the defendant had not filed a "true plea in bar,"[20] as defined by § 29-1817, in that he had not alleged that he was previously acquitted, convicted, or pardoned; therefore, the order denying the purported plea in bar could not be considered final and appealable under Milenkovich.
More recently, in State v. Jackson,[21] we considered the merits of the defendant's claim that a retrial following the declaration of a mistrial would constitute double jeopardy. Neither the parties nor this court raised a jurisdictional issue, and we concluded that retrial would violate the defendant's constitutional right not to be placed twice in jeopardy, because the record did not demonstrate the manifest necessity of the mistrial.
Rubio did not present a colorable double jeopardy claim, because jeopardy had never attached. As we noted in the opinion, the defendant in Rubio did not assert that he had previously been acquitted, convicted, or pardoned. And, in fact, he had been subjected only to a suppression hearing in federal court, not to a full trial on the criminal charges. Jackson, on the other hand, presented a true double jeopardy claim, because jeopardy had attached to the defendant prior to the declaration of the mistrial. However, the double jeopardy claim which we found to be meritorious in Jackson did not result from an acquittal, conviction, or pardon within the meaning of § 29-1817. Thus, there is tension between Rubio and Jackson as to whether a "true plea in bar" may include only double jeopardy claims arising from an acquittal, conviction, or pardon, or whether a plea in bar may also be used to raise a nonfrivolous double jeopardy claim arising from the declaration of a mistrial.
A literal reading of the language of § 29-1817 would lead to the first conclusion, and there is some case law which would support this interpretation.[22] But were we to adopt this literal interpretation, there would be no remedy whereby a claim of double jeopardy resulting from a mistrial could be resolved before the retrial actually occurs, thereby effectively depriving the defendant of his constitutional right even if the double jeopardy claim is eventually found to have merit. The need for such a remedy forms the underlying rationale of Abney v. United States,[23] in which the U.S. Supreme Court noted that the essential guarantee of the Double Jeopardy Clause would be lost
if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit.
[7,8] In Milenkovich, we noted that state courts had reached differing conclusions as to whether Abney established a federal constitutional requirement of immediate review of double jeopardy claims. We did not reach the constitutional issue because we concluded that § 29-1817 "authorizes a defendant to bring a special application to a court to enforce the defendant's constitutional right to avoid double jeopardy"[24] and that the denial of such an application constituted a final, appealable order. A mistrial entered without manifest necessity is the equivalent of an acquittal for purposes of double jeopardy analysis in that each terminates jeopardy without a finding of guilt. Were we to narrowly interpret § 29-1817 as authorizing a special application to enforce some but not all colorable double jeopardy claims based upon a previous prosecution, a constitutional question could arise. State procedural and evidentiary rules construed and applied in an illogical manner have been held to violate a criminal defendant's federal constitutional rights.[25] It is the duty of a court to give a statute an interpretation that meets constitutional requirements if it can reasonably be done.[26]
[9] We therefore hold that a plea in bar pursuant to § 29-1817 may be filed to assert any nonfrivolous double jeopardy claim arising from a prior prosecution, including a claim that jeopardy was terminated by entry of a mistrial without manifest necessity. To the extent that language in Rubio is inconsistent with this holding, it is disapproved. We construe Williams' plea in bar as asserting a nonfrivolous double jeopardy claim based upon the mistrial declared after jeopardy had attached, and we conclude that the order overruling the plea in bar was a final, appealable order which we have jurisdiction to review.

2. Merits
[10] This court, upon granting further review which results in the reversal of a decision of the Nebraska Court of appeals, may consider, as it deems appropriate, some or all of the assignments of error the Court of appeals did not reach.[27] In the interest of judicial economy, we address the substantive issues raised by Williams' double jeopardy claim which were not reached by the Court of Appeals due to its conclusion that it lacked jurisdiction to do so.
As we have noted, double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant. While "'[t]he words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden,'" the words "'do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge.'"[28] There are "'degrees of necessity,'" and a "'"high degree"'" is required before a court can conclude that a mistrial is appropriate.[29]
[11-13] The "'classic basis'" for a proper mistrial is the trial judge's belief that the jury is unable to reach a verdict.[30] The trial judge's decision to declare a mistrial when he or she considers the jury deadlocked is therefore accorded great deference by a reviewing court.[31] Reviewing courts have an obligation to satisfy themselves that the trial judge exercised sound discretion in declaring a mistrial.[32] But our narrow scope of review in this instance is tempered by significant policy considerations articulated by the U.S. Supreme Court in Arizona v. Washington:[33]
If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.
Because a deadlocked jury is not the equivalent of an acquittal, a trial court's determination of a mistrial due to a deadlocked jury does not terminate the original jeopardy to which the defendant was subjected and, thus, retrial is not automatically prohibited by the Double Jeopardy Clause.[34]
Williams argues that the trial judge's conversation concerning the deadlock with the jury foreman was an ex parte communication which bars his retrial under Strasheim v. State.[35] In that case, the trial judge conducted a colloquy with the jury about its reported inability to reach a verdict, during which the defendant and his counsel were not present. The judge made a statement to the jury regarding the importance of reaching a verdict which expanded upon the jury's role in the criminal justice system. The jury then resumed its deliberations and later returned a verdict of guilty. On appeal, the defendant argued that he had a right to be present when the judge addressed the jury about its deadlock. We agreed, found that prejudicial error had occurred, and reversed the conviction and remanded the cause for further proceedings. Because no mistrial was declared and no double jeopardy issue was presented, Strasheim is instructive but not determinative of this case.
Williams' primary argument is that because he and his counsel were not present when the jury reported that it was deadlocked and the judge declared a mistrial, he was deprived of his right to counsel at a critical stage of the proceeding and thus, there could be no manifest necessity for the mistrial. We note that unlike the Federal Rules of Criminal Procedure, Nebraska has no specific statute or rule requiring a trial court to involve the defendant and counsel in the decision of whether to declare a mistrial.[36] But Strasheim supports Williams' argument that he and his counsel should have been present when the trial judge addressed the jury about its reported deadlock and then declared a mistrial. We conclude that the trial judge erred in conducting the colloquy with the jury outside the presence of Williams, his counsel, and the prosecutor.
[14] The remaining question is whether this error automatically bars a retrial. We note that in Strasheim, the error resulted in a reversal of the conviction and a remand of the cause to the district court for further proceedings. There was no indication in our opinion that jeopardy had terminated and the defendant could not be retried. But Williams argues that a similar error should automatically preclude his retrial. We reject this bright-line approach. In State v. Bostwick,[37] we employed a test utilized by the Ninth Circuit Court of Appeals in Arnold v. McCarthy,[38] in which several factors are to be considered in determining whether a trial judge has properly exercised discretion in granting a mistrial, including
"(1) a timely objection by defendant, (2) the jury's collective opinion that it cannot agree, (3) the length of the deliberations of the jury, (4) the length of the trial, (5) the complexity of the issues presented to the jury, (6) any proper communications which the judge has had with the jury, and (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict."[39]
"`[T]he most critical factor is the jury's own statement that it was unable to reach a verdict.'"[40]
In this case, the jury, through its presiding juror, declared that it was deadlocked and unable to reach a verdict after deliberating for approximately 7½ hours. The judge's substantive inquiries to the presiding juror were proper and elicited a response that there was not a reasonable probability that the jury could arrive at a verdict. When the judge asked if there was anything the court could do to assist the jury in concluding its task, and the presiding juror suggested that rereading the testimony of the victim might be helpful, the judge properly indicated that this would not be permissible. Because Williams and his counsel were not present, Williams did not have an opportunity to object when the judge stated that he would declare a mistrial. But even if Williams, his counsel, and the prosecutor had been present and either counsel had objected, the record would support the declaration of a mistrial over such objection, because the judge's opinion that the jury was hopelessly deadlocked is supported by the record. Thus, taking into consideration the relevant factors, we conclude that although the judge erred in not having the parties and counsel present during his colloquy with the jury regarding its inability to reach a verdict, the court did not abuse its discretion in ordering the mistrial. Accordingly, jeopardy did not terminate and retrial is not barred by principles of double jeopardy.

V. CONCLUSION
For the reasons discussed, we reverse the judgment of the Court of Appeals and remand the cause to that court with directions to (1) affirm the order of the district court overruling Williams' plea in bar and (2) remand the cause to the district court for further proceedings consistent with this opinion.
Reversed and remanded with directions.
NOTES
[1] State v. Jackson, 274 Neb. 724, 742 N.W.2d 751 (2007).
[2] State v. Rubio, 261 Neb. 475, 623 N.W.2d 659 (2001).
[3] State v. Jackson, supra note 1.
[4] Id.
[5] See State v. Bostwick, 222 Neb. 631, 385 N.W.2d 906 (1986).
[6] See State v. Dragoo, 277 Neb. 858, 765 N.W.2d 666 (2009).
[7] Arizona v. Washington, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978); Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).
[8] Arizona v. Washington, supra note 7.
[9] Id., 434 U.S. at 503-05.
[10] See State v. Marshall, 269 Neb. 56, 690 N.W.2d 593 (2005).
[11] State v. Jackson, supra note 1, 274 Neb. at 728, 742 N.W.2d at 756, quoting Wade v. Hunter, 336 U.S. 684, 69 S. Ct. 834, 93 L. Ed. 2d 974 (1949).
[12] Arizona v. Washington, supra note 7; State v. Jackson, supra note 1; State v. Marshall, supra note 10.
[13] State v. Milenkovich, 236 Neb. 42, 458 N.W.2d 747 (1990).
[14] Abney v. United States, 431 U.S. 651, 660, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977).
[15] State v. Milenkovich, supra note 13, 236 Neb. at 48, 458 N.W.2d at 751.
[16] Id.
[17] State v. Lynch, 248 Neb. 234, 533 N.W.2d 905 (1995).
[18] State v. Rubio, supra note 2.
[19] State v. Rubio, supra note 2, 261 Neb. at 477, 623 N.W.2d at 661.
[20] Id.
[21] State v. Jackson, supra note 1.
[22] See Melcher v. State, 109 Neb. 865, 192 N.W. 502 (1923) (holding issues which are proper subject of plea in abatement cannot be raised by plea in bar).
[23] Abney v. United States, supra note 14, 431 U.S. at 662.
[24] State v. Milenkovich, supra note 13, 236 Neb. at 48, 458 N.W.2d at 751.
[25] See, e.g., Holmes v. South Carolina, 547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006); Washington v. Texas, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).
[26] State v. Arterburn, 276 Neb. 47, 751 N.W.2d 157 (2008).
[27] State v. Davlin, 265 Neb. 386, 658 N.W.2d 1 (2003).
[28] State v. Jackson, supra note 1, 274 Neb. at 728-29, 742 N.W.2d at 756, quoting Arizona v. Washington, supra note 7.
[29] Id. at 729, 742 N.W.2d at 756, quoting Arizona v. Washington, supra note 7.
[30] Id.
[31] Arizona v. Washington, supra note 7.
[32] State v. Jackson, supra note 1.
[33] Arizona v. Washington, supra note 7, 434 U.S. at 509-10. See, also, State v. Bostwick, supra note 5.
[34] Richardson v. United States, 468 U.S. 317, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984); State v. Bostwick, supra note 5.
[35] Strasheim v. State, 138 Neb. 651, 294 N.W. 433 (1940).
[36] Fed. R. Crim. P. 26(3).
[37] State v. Bostwick, supra note 5.
[38] Arnold v. McCarthy, 566 F.2d 1377 (9th Cir. 1978).
[39] State v. Bostwick, supra note 5, 222 Neb. at 646, 385 N.W.2d at 916, quoting Arnold v. McCarthy, supra note 38.
[40] Id.