Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/07/2017 09:11 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
DAWNELLE C. TODD, APPELLANT.
___ N.W.2d ___

Filed April 14, 2017.    No. S-16-621.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Judgments: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. But an appellate court independently reviews questions of law in appeals from the county court.

3. **Pleadings.** Issues regarding the grant or denial of a plea in bar are questions of law.

4. **Judgments: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.

5. **Motions for Mistrial: Juries: Appeal and Error.** A trial court's determination to declare a mistrial based on its finding that a manifest necessity exists for discharging the jury is reviewed for an abuse of discretion.

6. **Constitutional Law: Double Jeopardy.** The Double Jeopardy Clauses of both the federal and the Nebraska Constitutions protect a defendant against a second prosecution for the same offense after an acquittal or conviction.

7. **Double Jeopardy: Motions for Mistrial.** A mistrial does not automatically terminate jeopardy, because a trial can be discontinued when particular circumstances manifest a necessity for doing so, and when failure to discontinue would defeat the ends of justice.

8. ____: ____. Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant.
9. **Double Jeopardy: Motions for Mistrial: Records.** A specific finding of manifest necessity is not necessary to prevent termination of jeopardy if the record provides sufficient justification for the mistrial ruling.
10. **Motions for Mistrial: Records.** Where the reason for a mistrial is not clear from the record, the uncertainty with respect to manifest necessity must be resolved in favor of the defendant.

Appeal from the District Court for Dodge County, Geoffrey C. Hall, Judge, on appeal thereto from the County Court for Dodge County, Kenneth Vampola, Judge. Judgment of District Court affirmed.

Adam J. Sipple, of Johnson & Mock, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, Erin E. Tangeman, and, on brief, George R. Love for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Dawnelle C. Todd appeals the decision of the district court for Dodge County affirming the order of the Dodge County Court which denied Todd's plea in bar. The county court had found that events at trial amounted to a manifest necessity to declare a mistrial and that therefore, the Double Jeopardy Clause did not prohibit a new trial. We affirm the district court's decision.

## STATEMENT OF FACTS

In the early hours of September 3, 2014, a police officer stopped the vehicle driven by Todd because she failed to stop at a sign and was driving on the painted median. After the officer noted signs of intoxication, the officer administered a

preliminary breath test, which Todd failed. The officer arrested Todd and administered a chemical breath test that showed a result of .132 blood alcohol content. The State filed a complaint in the Dodge County Court charging Todd with driving under the influence in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010), a Class W misdemeanor under Neb. Rev. Stat. § 60-6,197.03(1) (Cum. Supp. 2014).

Prior to trial, the State filed a motion for an order in limine in the county court. In its motion, the State sought to prohibit Todd from "offering evidence, argument or comment in the presence of the jury [regarding a] choice of evils defense pursuant to Neb. Rev. Stat. § 28-1407." Todd wished to present a "choice of evils" defense in which she sought to claim that when she was stopped by the officer, she was attempting to escape from a frightening situation and driving was her only means to reach a place of safety. Todd offered a proposed jury instruction to the effect that the jury must find her not guilty if it found she had acted to avoid a greater harm.

At a hearing on the State's motion in limine, Todd testified regarding the circumstances that she claimed supported a choice of evils defense. She testified that on the night of September 2, 2014, she was drinking at her brother's residence in Fremont, Nebraska, and that she intended to stay the night there because she had been drinking and "was not safe to drive." Todd decided to go out to get some food, and she gave her car keys to Paige Bjorklund, a woman Todd had met that night. Todd rode in the passenger seat, while Bjorklund drove Todd's car. Todd could not remember everything that happened, but at some point, she woke up and found herself alone in her vehicle on a dark residential street. Todd noticed that she was no longer wearing the tank tops she had previously been wearing and that from the waist up, she was wearing only her bra. She could not find her car keys or cell phone, and so she climbed into the back seat to look for them. Not finding them there, she covered herself in a blanket and went to sleep in the back seat.

Sometime later, Todd awoke when Bjorklund and another woman approached the vehicle. Todd opened the door, and Bjorklund tossed her car keys to her and walked away. Todd asked about her cell phone, but the women did not reply. Todd moved up to the driver's seat and, after waiting a while, decided to "drive away to find a lighted area, a public place." Todd testified that she "did not feel safe" and that she felt "very disoriented" and thought that her condition was the result of more than the effects of alcohol. She did not know why she was no longer wearing her tank tops or why her cell phone was missing, and she thought she might have been assaulted. Todd testified that she wanted to get away from Bjorklund and that she thought driving away from the scene was the least harmful way to avoid being assaulted again. She drove about two blocks before the officer stopped her vehicle.

The county court sustained the State's motion in limine and refused Todd's proposed instruction. The court found that the proposed instruction was not warranted by the evidence. The court cited precedent to the effect that the choice of evils defense requires, inter alia, that the defendant reasonably believed that his or her action was necessary to avoid a specific and immediate harm. The court noted that although Todd identified Bjorklund, "the facts presented in this case are based on generalized belief and conjecture, and are insufficient to supply a factual basis of an immediate harm, either actual or reasonably believed by Todd to be certain to occur."

Todd testified in her own defense at the trial. She testified regarding the events that led to her being stopped by the police officer, including drinking at her brother's house, leaving to get food with Bjorklund, waking up alone in the car on a residential street with her tank tops off, Bjorklund's approaching the car and throwing Todd's keys into the car, and Bjorklund's walking away with the other woman. Todd also testified that she was scared when she woke up in the car; however, the court sustained the State's objections when

defense counsel asked Todd why she felt scared, disoriented, and confused when the police officer stopped her. In addition, the court sustained the State's objections to various other questions defense counsel posed to Todd regarding her fears and her reasons for driving the car away from the scene where she woke up. The court also struck certain answers that Todd gave before the court's ruling sustaining the State's objections. Such answers included Todd's testimony to the effect that getting the car keys back took some of her fear away because "[i]t was an escape route" and that her purpose for driving was "[t]o get away."

After the court sustained multiple objections and struck multiple answers in a short period of time, the State requested to be heard outside the jury's presence. After the jury left the courtroom, the State asserted that "despite a specific order from this Court not to ask questions, elicit testimony, make argument regarding justification or this being necessary or a necessity, defense counsel continues down the line of questioning." The State noted that Todd had "testified that this was necessary for her to escape." After argument by both parties, the State moved for a mistrial. After further argument, the court stated that it had "specifically told [Todd] to wait to answer — questions were asked and to answer the questions and to not volunteer [but s]he volunteered this term, escape route." The court sustained the State's motion and declared a mistrial. The court stated that it would "set this down for further trial on [a later date]" and "[s]tart all over again."

Todd thereafter filed a plea in bar asking that the case be dismissed with prejudice. She argued that a retrial would violate constitutional protections against double jeopardy, because jeopardy had attached when the jury was sworn in at the first trial and jeopardy had terminated when the court declared a mistrial without finding a manifest necessity to do so.

After a hearing, the county court ruled on Todd's plea in bar. In its order, the county court stated that the record was

clear that it had "previously and specifically deemed as inadmissible" evidence which would support Todd's justification theory, and it rejected Todd's argument that the State had opened the door to such evidence. The court also rejected Todd's argument that "'strictest scrutiny'" of manifest necessity should apply to the court's analysis, because the State had used its superior resources to harass or achieve a technical advantage over Todd or because the State moved for a mistrial in order to buttress weaknesses in its evidence. The court stated that the evidence presented by the State was sufficient to overcome any motion to dismiss that might have been filed when the State rested its case.

Regarding whether there was a manifest necessity to declare a mistrial, the county court stated that it "ultimately granted the mistrial due to the accumulated effect of statements and questions, whether objected to or not, the likelihood of which could affect the impartiality of one or more jurors." The court cited specific statements made and questions asked by defense counsel during voir dire, opening statements, and cross-examination of the officer during the State's case, which statements and questions related to the disallowed defense. The court determined that following these earlier violations of its order in limine, two statements Todd made during her testimony in her own defense—in which she justified her driving as "'an escape route'" and an attempt to "'get away'"— had "tipped the scale toward a mistrial." The county court acknowledged that at the time it declared a mistrial, it did not explicitly state that there was a "'manifest necessity'" to do so. However, the court concluded that the record in this case provided sufficient justification for its declaration of a mistrial and that therefore, jeopardy had not terminated. The county court denied Todd's plea in bar.

Todd appealed to the district court and claimed that the county court erred when it denied her plea in bar and when it sustained the State's motion in limine. The district court rejected Todd's arguments and affirmed the county court's

rulings. In its order, the district court cited precedent of this court to the effect that the decision to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. The district court stated that the "question as to whether or not jeopardy terminated upon the granting of the mistrial is a separate and different question." After reviewing the county court record, the district court stated that, "sitting in a position of appellate review," the district court would "not disturb the holding of the Dodge County Court that the 'entire record' supports a finding of manifest necessity for the mistrial absent an abuse of discretion." The district court concluded that "[w]hen the entire record is considered, no such abuse can be found." The district court then stated, "[T]his Court affirms the decision of the Dodge County Court regarding its ruling on [Todd's] Plea in Bar and the State's Motion in Limine."

Todd appeals the district court's order affirming the county court's rulings.

## ASSIGNMENT OF ERROR

Todd claims, restated, that the district court erred when it applied an incorrect standard of review and affirmed the denial of her plea in bar. Todd does not assign error to the district court's affirmance of the county court's order sustaining the State's motion in limine.

## STANDARDS OF REVIEW

[1,2] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry

is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. But we independently review questions of law in appeals from the county court. *Id*.

[3,4] Issues regarding the grant or denial of a plea in bar are questions of law. *State v. Arizola*, 295 Neb. 477, 890 N.W.2d 770 (2017). On a question of law, an appellate court reaches a conclusion independent of the court below. *Id*.

[5] A trial court's determination to declare a mistrial based on its finding that a manifest necessity exists for discharging the jury is reviewed for an abuse of discretion. See *State v. Williams*, 278 Neb. 841, 774 N.W.2d 384 (2009).

## ANALYSIS

*Standards of Review: District Court*
*Properly Reviewed County Court's*
*Ruling Declaring a Mistrial Based*
*on Manifest Necessity for*
*Abuse of Discretion.*

Todd contends that the district court used the wrong standard of review when it affirmed the county court's denial of her plea in bar. Todd specifically argues that the district court reviewed the county court's denial of her plea in bar for an abuse of discretion, whereas the ruling on the plea in bar should have been reviewed as a question of law. As set forth below, although the ultimate ruling on a plea in bar is a question of law, to the extent the issue raised by the plea in bar involves a trial court's declaration of a mistrial based on its determination that a manifest necessity requires it to do so, such trial court ruling is reviewed for an abuse of discretion.

Todd relies on *State v. Williams, supra*, wherein we recited the proposition that issues regarding the grant or denial of a plea in bar are questions of law and that on a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. Todd appears to overlook the fact that in *Williams*, we also stated

the proposition that a trial court's determination of whether a manifest necessity existed for discharging the jury and declaring a mistrial is reviewed for an abuse of discretion. *Id.*

[6-8] In *Williams*, as in the present case, the ruling appealed was the denial of a plea in bar in which the defendant sought dismissal on the basis that jeopardy had terminated when the court declared a mistrial and a retrial would violate constitutional protections against double jeopardy. In *Williams*, we set forth the law regarding double jeopardy after declaration of a mistrial as follows:

The Double Jeopardy Clauses of both the federal and the Nebraska Constitutions protect a defendant against a second prosecution for the same offense after an acquittal or conviction. Stated another way, "[a] State may not put a defendant in jeopardy twice for the same offense." In *Arizona v. Washington*, [434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978),] the U.S. Supreme Court explained why the declaration of a mistrial in a criminal prosecution may trigger the constitutional protection afforded by the Double Jeopardy Clause:

"Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.' The reasons why this 'valued right' merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." [*Id.*, 434 U.S. at 503-05.]

In a case tried to a jury, jeopardy attaches when the jury is impaneled and sworn. However, a mistrial does not automatically terminate jeopardy, because "'a trial can be discontinued when particular circumstances manifest a necessity for doing so, and when failure to discontinue would defeat the ends of justice.'" Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant.

278 Neb. at 846-47, 774 N.W.2d at 389.

In *State v. Williams*, 278 Neb. 841, 774 N.W.2d 384 (2009), having determined as a matter of law the circumstances under which the declaration of a mistrial does or does not implicate double jeopardy concerns, we turned to consider whether there was a manifest necessity for a mistrial in that specific case. In reviewing the decision of the trial court to declare a mistrial, we again cited *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978), to note that a trial judge's decision to declare a mistrial is accorded great deference by a reviewing court, which has an obligation to satisfy itself that the trial judge exercised sound discretion in declaring a mistrial. *State v. Williams, supra*. We ultimately concluded that the trial court "did not abuse its discretion in ordering the mistrial" and that "[a]ccordingly, jeopardy did not terminate and retrial is not barred by principles of double jeopardy." *Id*. at 854, 774 N.W.2d at 394.

Thus, in *State v. Williams, supra*, we decided the ultimate question raised by the plea in bar, i.e., whether retrial was barred by principles of double jeopardy, as a question of law. However, as a preliminary step to deciding that question of law, we needed to review the trial court's declaration of a mistrial based on its determination that there was a manifest necessity to do so. Because a trial court's determination of a manifest necessity for a mistrial is to be accorded great deference, we reviewed that specific determination for an abuse of discretion. *Id*.

We have applied two-level standards of review in other cases challenging the denial of a plea in bar. In *State v. Muhannad*, 290 Neb. 59, 858 N.W.2d 598 (2015), the defendant claimed that the prosecutor provoked the defendant to move for a mistrial and that because of the prosecutor's conduct, it would be unfair under double jeopardy principles to conduct a second trial. In that circumstance, we stated that "[w]hile the denial of a plea in bar generally involves a question of law, we review under a clearly erroneous standard a finding concerning the presence or absence of prosecutorial intent to provoke the defendant into moving for a mistrial." *State v. Muhannad*, 290 Neb. at 64, 858 N.W.2d at 603. In that case—as in this case—the ultimate determination was a question of law, but a part of the analysis required a different standard of review.

In the present case, Todd takes issue with the district court's statement in its order to the effect that because there was "no such abuse," it would not disturb the county court's ruling declaring a mistrial based on manifest necessity and then in the next sentence, that it would affirm the denial of the plea in bar. We acknowledge that the district court may not have been entirely clear in making the distinction we made above regarding the different standards to be applied when reviewing the ruling on the mistrial as distinguished from the ruling on the plea in bar. However, as we explain later in this opinion wherein we affirm the district court's order, we find as unavailing Todd's effort to conflate the district court's rulings on the mistrial and plea in bar as though both had been decided by application of the abuse of discretion standard. The district court properly reviewed the county court's ruling declaring a mistrial based on manifest necessity for abuse of discretion, and its declaration that the plea in bar "is a separate and different question" satisfies us that the district court actually evaluated the plea in bar as a question of law.

*District Court Did Not Err When It*
*Affirmed County Court's Denial*
*of Todd's Plea in Bar.*

Having clarified the appropriate standards of reviews, we apply them to this case. The substance of Todd's claim is that the district court erred when it affirmed the county court's denial of her plea in bar. We have reviewed the record and applied the de novo standard of review to the legal question of whether a plea in bar should have been granted. Finding no error, we reject this assignment of error.

In her plea in bar, Todd claimed that a retrial after the county court declared a mistrial based on manifest necessity would violate her rights against double jeopardy. However, as noted above, we have held that the bar against double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant. *State v. Williams*, 278 Neb. 841, 774 N.W.2d 384 (2009). We emphasize that this proposition applies in situations where a mistrial is granted over the objection of the defendant; a different standard applies when mistrial is granted at the urging of the defendant. See *State v. Cisneros*, 248 Neb. 372, 535 N.W.2d 703 (1995) (noting that absent intentional conduct on part of prosecutor to goad defendant into moving for mistrial, defendant cannot raise bar of double jeopardy to second trial after succeeding in bringing first trial to close on his or her own motion). See, also, *State v. Muhannad*, 290 Neb. 59, 858 N.W.2d 598 (2015).

As in *State v. Williams, supra*, which we have described above, the instant case is one in which a mistrial was granted over the defendant's objections. In *Williams*, the reason for granting a mistrial was the """"classic basis"""" for mistrial—a deadlocked jury. 278 Neb. at 851, 774 N.W.2d at 392. The basis for the mistrial in this case was not a deadlocked jury; instead, the basis for the mistrial was described by the county court as "the accumulated effect of statements and questions" by defense counsel that the court determined were in

violation of its ruling on the motion in limine and which the court further determined "could affect the impartiality of one or more jurors."

[9,10] The county court did not explicitly characterize its basis for mistrial as "manifest necessity" at the time it declared a mistrial. However, when it ruled on Todd's plea in bar, the county court noted the principles surrounding the manifest necessity requirement and concluded that the record provided sufficient justification for its ruling. The county court's failure to use the language of manifest necessity at the time of the ruling declaring a mistrial is not determinative. We have recognized that a specific finding of manifest necessity is not necessary to prevent termination of jeopardy if the record provides sufficient justification for the mistrial ruling. *State v. Jackson*, 274 Neb. 724, 742 N.W.2d 751 (2007) (citing *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)). We have also stated that "[w]here the reason for a mistrial is not clear from the record, the uncertainty with respect to manifest necessity must be resolved in favor of the defendant." *State v. Jackson*, 274 Neb. at 731, 742 N.W.2d at 757. Thus, the appropriate inquiry on appellate review is whether the record provides sufficient justification of a manifest necessity to declare a mistrial; if the record is not clear, then uncertainty will be resolved in favor of the defendant.

In view of the foregoing, we review the county court's declaration of a mistrial in light of precedent regarding the type of reasoning that indicates the existence of a manifest necessity for a mistrial. In this case, the record demonstrates a high degree of necessity to declare a mistrial.

The U.S. Supreme Court has indicated that there is a spectrum of degrees of necessity and stated that manifest necessity requires a "'high degree'" of necessity. *Arizona v. Washington*, 434 U.S. at 506. At one end of the range are cases where "the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that

the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Id.*, 434 U.S. at 508. The Court stated that these types of cases should be subject to "strictest scrutiny" and therefore were less likely to support manifest necessity. *Id.* The Court stated that "[a]t the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict . . . ." *Id.*, 434 U.S. at 509. The Court described this as "the classic basis for a proper mistrial." *Id.* The deadlocked jury circumstance illustrates manifest necessity for a mistrial and a second trial will not be barred by principles of double jeopardy under this circumstances.

In *Arizona v. Washington*, 434 U.S. at 510, "the trial judge [had] ordered a mistrial because the defendant's lawyer made improper and prejudicial remarks during his opening statement to the jury." The Court found these facts to be somewhere "along the spectrum" between the extremes mentioned above. *Id.* The Court reviewed the trial judge's declaration of mistrial and concluded that "the mistrial order [was] supported by the 'high degree' of necessity which is required in a case of this kind." *Id.*, 434 U.S. at 516. In reaching this conclusion, the Court noted that the trial judge did not act "irrationally or irresponsibly," but instead, the record indicated that "[d]efense counsel aired improper and highly prejudicial evidence before the jury, the possible impact of which the trial judge was in the best position to assess," and that "the trial judge did not act precipitately in response to the prosecutor's request for a mistrial," but instead, the judge "gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial." *Id.*, 434 U.S. at 514-16. The court was persuaded by a record that indicated "the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding." *Id.*, 434 U.S. at 516.

As in *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978), the county court's reasons for

declaring a mistrial based on manifest necessity in this case were found along the spectrum. We do not think that the record supported Todd's contrary argument, rejected by the county court, that "strictest scrutiny" should apply, because the State was using its superior resources to harass or achieve a technical advantage over Todd or because the State moved for a mistrial in order to buttress weaknesses in its evidence. The county court declared a mistrial because it determined that defense counsel had repeatedly attempted to present evidence to the jury in violation of the court's order in limine. The county court explained that it declared a mistrial because it determined that defense counsel's actions could affect the impartiality of the jurors. As in *Arizona v. Washington*, the trial judge in this case was in the best position to assess the potential impact on the jury. The record shows that the county court acted responsibly and deliberately rather than precipitately. The court did not declare mistrial upon the first violation of the order in limine. Instead, the court initially attempted the conservative measure of striking answers it found to have violated its order in limine. After a number of violations, the court declared a mistrial only after two additional occurrences that it determined had "tipped the scale toward a mistrial." After these occurrences, the court heard and considered arguments from both sides.

Similar to the reasoning in *Arizona v. Washington, supra*, we believe that the record in this case supports a finding of manifest necessity, and we therefore conclude that the district court did not err when it determined that the county court did not abuse its discretion when it declared a mistrial based on its determination that a manifest necessity required it to do so.

Referring to *Arizona v. Washington, supra*, we have stated: "Double jeopardy does not arise if the State can demonstrate manifest necessity for a mistrial declared over the objection of the defendant." *State v. Williams*, 278 Neb. 841, 847, 774 N.W.2d 384, 389 (2009). It logically follows that the district

court did not err when it concluded that the county court had articulated a manifest necessity to declare a mistrial and that therefore, double jeopardy did not bar a retrial. Consequently, the district court did not err when it denied Todd's plea in bar. We reject Todd's assignment of error.

## CONCLUSION

We conclude that the district court did not err in determining that the county court did not abuse its discretion when it found a manifest necessity to declare a mistrial and that the district court did not err in determining as a matter of law that double jeopardy did not bar a retrial. We therefore affirm the district court's order affirming the order of the county court which denied Todd's plea in bar.

Affirmed.