IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. TOLAND

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LYNETTE S. TOLAND, APPELLANT.

Filed October 9, 2018.    No. A-17-1139.

Appeal from the District Court for Lancaster County, JOHN A. COLBORN, Judge, on appeal thereto from the County Court for Lancaster County, THOMAS E. ZIMMERMAN and TIMOTHY C. PHILLIPS, Judges. Judgment of District Court affirmed.

Timothy S. Noerrlinger for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Lynnette S. Toland appeals from the Lancaster County District Court's order affirming her convictions for driving under the influence (DUI) with a passenger under the age of 16, first offense DUI, and careless driving. Toland assigns as error the district court's affirming the county court's denial of her motion to suppress her urine sample and the county court's overruling of her motion in limine which sought to exclude the opinion testimony of the drug recognition expert (DRE). For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

On April 21, 2016, at about 9:50 p.m., Lincoln police officer Max Hubka observed a car, without its headlights or taillights activated, weaving across lane lines, failing to signal lane

- 1 -

changes, and nearly striking parked vehicles. Hubka signaled for the car to pull over by activating his overhead emergency lights, but the car continued for approximately two blocks and, when the car finally pulled over, it ran up onto the curb. Hubka contacted the driver, who was identified as Toland. There were two other individuals in the car--an adult female front seat passenger and a child in the back seat.

As Hubka approached the car, Toland rolled down the driver's side rear window instead of the driver's window and she was attempting to put on her seatbelt. Once Toland rolled down the driver's window, Hubka detected the odor of alcohol coming from inside the vehicle. Hubka observed that Toland had droopy eyelids and slurred speech, was confused, and had difficulty performing simple tasks, such as rolling down her window, putting on her seatbelt, and putting her car in park. Toland denied drinking, and Hubka determined that the front seat passenger had consumed a significant amount of alcohol accounting for the odor of alcohol coming from inside the car. Hubka asked Toland followup questions about what might have caused impairment, and Toland answered that she had taken one "Zolbem" about 1 hour prior to the stop.

Hubka administered field sobriety tests to Toland, who showed several signs of impairment. Hubka then administered a preliminary breath test (PBT) to Toland which indicated that Toland did not have any alcohol in her system. Despite the negative result of the PBT, Hubka formed the opinion, based upon the impairment he observed, that Toland was under the influence of a drug other than alcohol and needed to undergo a DRE evaluation. Hubka arrested Toland on suspicion of driving under the influence of a drug other than alcohol and transported Toland to the Detox center in order to complete the DRE evaluation.

After arriving at the Detox center, Hubka informed Toland of her *Miranda* rights, which she invoked. Toland completed a breath test which indicated no presence of alcohol in her breath. Hubka then continued the DRE evaluation. During the DRE evaluation, a female nurse collected a urine sample from Toland. Testing of the urine sample confirmed the presence of zolpidem and citalopram/escitalopram, both of which are central nervous system (CNS) depressants, in her system. Toland was ultimately charged in Lancaster County Court with first offense DUI in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010), DUI with a passenger under the age of 16 in violation of Neb. Rev. Stat. § 28-1254 (Reissue 2016), and careless driving, in violation of Neb. Rev. Stat. § 60-6,212 (Reissue 2010).

Prior to trial, Toland moved to suppress her urine sample, alleging that the sample was unlawfully obtained and inadmissible in light of the U.S. Supreme Court's decision in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). Following a hearing, the county court overruled Toland's motion to suppress in a nearly 5-page order in which the court concluded that, because a urine sample is more similar to a breath sample than a blood sample based on the framework set forth in *Birchfield*, Toland's urine sample was lawfully obtained without a warrant and was admissible at trial. The county court's order did not address the State's claim that the good faith exception to the search warrant requirement was applicable.

Toland also filed a motion in limine to exclude Hubka's DRE opinion on the basis that the opinion, based on an incomplete DRE evaluation protocol, did not meet the standard for admissibility required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). The county court overruled this motion.

A bench trial was held on March 22, 2017. Toland renewed the issues raised in the motion to suppress her urine sample and the motion in limine which sought to exclude the DRE opinion testimony and received a standing objection on both issues. The State offered, and the county court accepted, Hubka as a DRE, with no objection from Toland. Additionally, the parties stipulated that the urine sample was properly obtained and the chain of custody was properly maintained. The parties also stipulated that the child in the back seat of Toland's car was 9 years old on the date of the offense.

Out of the 12 steps in the DRE evaluation checklist, the only step that Hubka did not complete was step 10, which is "Interrogation, Statements & Other Observations." Hubka did not complete step 10 because, prior to the beginning of the DRE evaluation, Toland invoked her *Miranda* rights. Despite not being able to interrogate Toland, Hubka explained that he had numerous other observations that helped him form the opinion, based on a reasonable degree of certainty within his field, that Toland was under the influence of a drug other than alcohol and was not able to safely operate a motor vehicle. Hubka's opinion was based upon Toland's driving behavior including her not activating the headlights and taillights of her car, crossing over into multiple lanes, failing to signal any lane changes, nearly striking parked vehicles, failing to properly yield to the emergency lights of a patrol vehicle, running onto the curb, failing to put the vehicle in park two separate times, difficulty rolling down her window, difficulty putting on her seatbelt, admitting she took a pill called "Zolbem" approximately 1 hour prior to the stop, and the significant impairment observed on field sobriety tests. Hubka further noted that Toland had bloodshot, watery eyes; droopy eyelids; slurred speech; and significant balance impairment.

The county court found Toland guilty of all three offenses and sentenced her to a $250 fine for DUI with a passenger under 16 years old; a $500 fine, 7 days in jail, and a 6-month license suspension for first offense DUI; and a $100 fine for careless driving. Toland timely appealed to the Lancaster County District Court. Following a hearing, the district court affirmed Toland's convictions and sentences. Specifically, the district court found that the county court properly denied Toland's motion to suppress the results of her urine test because (1) the urine test was lawfully obtained without a warrant as a search incident to arrest based upon the framework set forth in *Birchfield*, (2) she consented to provide the urine sample, and (3) even if the urine sample was unlawfully obtained, the good faith exception to the warrant requirement applied for the same reasons that it applied to the pre-*Birchfield* blood draw in *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017). Finally, the district court held that the county court correctly overruled Toland's motion in limine seeking to exclude Hubka's DRE opinion.

ASSIGNMENTS OF ERROR

Toland contends that the district court erred in affirming the county court's order overruling her motion to suppress her urine sample and in affirming the county court's order overruling her motion in limine.

STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Todd*, 296 Neb. 424, 894 N.W.2d 255 (2017). Both the district court

and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. But we independently review questions of law in appeals from the county court. *Id*.

ANALYSIS

MOTION TO SUPPRESS

Toland argues that the district court erred in affirming the trial court's order overruling her motion to suppress her urine test. In furtherance of that claim, Toland argues that the collection of urine for the purpose of administering a drug or alcohol test constitutes a search to which the Fourth Amendment applies, that searches conducted without the approval of a judge or magistrate are a violation of the Fourth Amendment unless they fall within an exception to that rule, and that no exception applies under these facts.

The Nebraska Supreme Court has held that "[s]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment to the U.S. Constitution, subject only to a few specifically established and well-delineated exceptions." *State v. Modlin*, 291 Neb. 660, 669, 867 N.W.2d 609, 616 (2015). Those exceptions are: "(1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest." *Id.*

Here, the arresting officer advised Toland that her refusal to submit to a urine test would be a separate crime for which she may be charged, an advisement required by Neb. Rev. Stat. § 60-6,197(5) (Cum. Supp. 2016). Following that admonition, Toland consented to the urine sample. Prior to the U.S. Supreme Court's decision in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), Toland providing her urine sample under these circumstances would have been considered a search undertaken with consent and/or a search incident to a valid arrest. But the U.S. Supreme Court in *Birchfield* addressed the voluntariness of a motorist's consent to a blood test when the motorist is advised that refusal will result in a criminal charge. Specifically, the Supreme Court held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.*, 136 S. Ct. at 2186. The Supreme Court also held that, unlike a breath test, the search incident to an arrest exception does not apply to a blood test obtained without a warrant. *Id.*, 136 S. Ct. at 2176. See, also, *State v. McCumber*, 295 Neb. 941, 953-54, 893 N.W.2d 411, 419 (2017) ("[w]ith the U.S. Supreme Court in *Birchfield* categorically finding that the exception of a warrantless search incident to a lawful arrest for drunk driving is unconstitutional in regard to a blood test, even under an implied consent law, we find § 60-6,197 is unconstitutional as applied to" the defendant). Likewise, Toland argues that her urine test obtained without a warrant under the threat of criminal prosecution violated the Fourth Amendment.

In furtherance of this position, Toland argues that a urine test is more like a blood test than a breath test thereby requiring the same Fourth Amendment protections articulated by the U.S. Supreme Court in *Birchfield*. Toland argues that the district court erred in finding that a urine test is more like a breath test and, therefore, was obtained as a valid search incident to arrest. But we

- 4 -

need not decide whether a urine test is akin to a blood test thereby implicating a *Birchfield* analysis, or akin to a breath test obtained as a valid search incident to arrest.

As the Nebraska Supreme Court held in *State v. Hoerle*, 297 Neb. 840, 846-47, 901 N.W.2d 327, 332 (2017), *cert. denied* 138 S. Ct. 1986 (2018):

> The Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its commands. The exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" Thus, a Fourth Amendment violation does not necessarily mean that the exclusionary rule applies.

> Because the exclusionary rule should not be applied to objectively reasonable law enforcement activity, the U.S. Supreme Court created a good faith exception to the rule. We have followed suit and applied the good faith exception in a number of cases.

Like Toland, the arresting officer in *Hoerle* obtained a blood sample after admonishing the defendant that failure to submit the sample was a separate crime but did so prior to the U.S. Supreme Court's pronouncement in *Birchfield*. In finding that the U.S. Supreme Court declared that the exclusionary rule "did not apply to evidence obtained by police who acted in objectively reasonable reliance on a statute authorizing warrantless administrative searches, but which was subsequently found to violate the Fourth Amendment," the Nebraska Supreme Court held:

> Applying this rationale, we discern no deterrent value in suppressing the results of Hoerle's blood test. The officer advised Hoerle that refusal to submit to a chemical test was a separate crime for which he may be charged, an advisement required by the statute. And the statute was not clearly unconstitutional at the time of Hoerle's arrest in April 2015.

> . . . .

> Because the officer here acted in objectively reasonable reliance on a statute that had not been found unconstitutional at the time, excluding the results of Hoerle's blood test would not serve the purpose of the exclusionary rule. We conclude that the good faith exception applies to warrantless pre-*Birchfield* blood draws.

*State v. Hoerle*, 297 Neb. at 849-51, 901 N.W.2d at 333-34. See, also, *State v. Nielsen*, 301 Neb. 88, ___ N.W.2d ___ (2018) (reaffirming holding in *Hoerle*).

The same can be said here. Even if a urine test is treated like a blood test and was obtained subject to the officer's statutory admonition potentially negating Toland's consent in violation of the Fourth Amendment, we find that the officer's admonition was made prior to the U.S. Supreme Court's holding in *Birchfield* in June 2016 and the good faith exception to the exclusionary rule applies to the warrantless search of Toland's urine sample. In so finding, we hold that the district court did not err in affirming the county court's overruling of Toland's motion to suppress this evidence.

MOTION IN LIMINE

Toland next argues that the district court erred in overruling her motion in limine seeking to exclude the expert opinion of Hubka on the basis that his opinion was lacking in reliability. We first note that "[t]he overruling of a motion in limine is not reviewable on appeal." *King v. Crowell*

*Memorial Home*, 261 Neb. 177, 181, 622 N.W.2d 588, 593 (2001). Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review; thus, when a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial to preserve error for appeal. *State v. Herrera,* 289 Neb. 575, 856 N.W.2d 310 (2014); *State v. Simmons*, 23 Neb. App. 462, 872 N.W.2d 293 (2015). Here, at the start of trial, Toland renewed her objections raised by the motion in limine and received a continuing objection to all testimony regarding that issue thereby preserving the alleged error for appeal.

Toland argues that Hubka's expert opinion should have been excluded "on the basis that the DRE protocol was not complete, and therefore, lacked the requisite reliability for admissibility." Brief for appellant at 20. We interpret Toland's argument as a *Daubert*/*Schafersman* challenge. More specifically, Toland does not argue or object to Hubka's competency to testify, nor does she generally challenge the validity of the DRE as a reliable methodology to be used in connection with identifying drug intoxication to support an expert's opinion testimony. Instead, Toland is attacking the application of the methodology in this case. Specifically, she argues that the DRE protocol requires application of a standardized, multi-step systematic process and that one step in that process, i.e., interrogation, was not performed which should have resulted in the exclusion of any opinions derived from its application.

In *State v. Daly*, 278 Neb. 903, 916, 775 N.W.2d 47, 61 (2009), after analyzing the various processes and studies associated with the DRE protocol and related testimony, the Nebraska Supreme Court held that "it was not an abuse of discretion to conclude that the available scientific literature supported the admission of DRE-based testimony." But, as stated above, Toland is not challenging the validity of the methodology generally, just its application here. In support of this position, Toland argues that one step in the DRE protocol, an interrogation of the defendant, was not performed here thereby precluding Hubka from developing an opinion on drug intoxication admissible in this case. We note that Hubka did not perform an interrogation due to Toland invoking her *Miranda* rights. As such, Toland attempts to argue that a DRE cannot reach an admissible expert opinion governing drug intoxication where the defendant has invoked his or her *Miranda* rights.

To the contrary, Hubka testified that he was able to reach an opinion governing drug intoxication without an interrogation. Toland did not offer any evidence which contradicted this testimony. The Nebraska Supreme Court has stated that it is incumbent upon the court to determine if the witness has applied the relevant methodology in a reliable manner. See *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004). However, the court has consistently reiterated " 'once the validity of the expert's reasoning or methodology has been satisfactorily established, any remaining questions regarding the manner in which that methodology was *applied* in a particular case will generally go to the weight of such evidence.' " *State v. Leibhart*, 266 Neb. 133, 142, 662 N.W.2d 618, 626 (2003), quoting *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). The Nebraska Supreme Court appears to have applied that principle in *Daly*, stating:

> Daly asserts, in passing, that foundation for [the expert]'s opinion was lacking because there was no video recording showing that [the expert]'s evaluation was performed correctly. But [the expert] testified about his evaluation of Daly and was available for

cross-examination about whether the evaluation was performed adequately. Such matters as whether vital signs were measured accurately are appropriate subjects for cross-examination. A video record of the evaluation was not necessary for [the expert]'s testimony to be admissible.

278 Neb. at 921, 775 N.W.2d at 64.

The Wisconsin Court of Appeals appears to have adopted a similar approach in *State v. Chitwood*, 369 Wis. 2d 132, 879 N.W.2d 786 (2016). In holding that an expert could offer opinion testimony on the issue of a driver's impairment without applying all 12 steps of the DRE protocol, the court held:

> [The DRE examiner's] determination may have been "more reliable" if he had been able to conduct the entire examination, but we are satisfied that his determination was sufficiently reliable based on those tests he was able to conduct. Anything beyond that was outside the province of the court--to admit or not--and better left for defense counsel to challenge during cross-examination.

*Id*. at 164, 879 N.W.2d at 801.

Here, Hubka testified that he observed enough of the relevant observations in this case utilizing the DRE protocol to reach an opinion that Toland was under the influence of a drug other than alcohol and was not able to safely operate a motor vehicle. There was no evidence which rebutted this opinion and the appellant has not directed us to, nor has our independent research uncovered, any caselaw which suggests that Hubka's opinion was not admissible. Accordingly, we hold the court did not abuse its discretion in overruling Toland's objection to the expert trial opinion testimony of Hubka thereby allowing the issue to be the proper subject of cross-examination and weight of the evidence.

## CONCLUSION

Having considered and rejected both of Toland's assigned errors, her convictions and sentences are affirmed.

AFFIRMED.