IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. WAGNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LESTER WAGNER, JR., APPELLANT.

Filed December 11, 2018.    No. A-18-038.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge, on appeal thereto from the County Court for Lancaster County, LAURIE J. YARDLEY, Judge. Judgment of District Court affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Matthew Meyerle for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Lester Wagner, Jr. (Lester), was convicted of negligent child abuse in violation of Neb. Rev. Stat. § 28-707(1) (Reissue 2016) following a jury trial in the county court for Lancaster County. Lester was sentenced to 180 days' imprisonment. Thereafter, Lester appealed the conviction and sentence to the district court for Lancaster County, which affirmed. On appeal to this court, Lester claims that his conviction was based on insufficient evidence and that his sentence was excessive. For the reasons set forth herein, we affirm.

### BACKGROUND

On February 5, 2017, K.P. and his brother N.P. went to church while their stepfather, Lester, and their mother remained at home tending to their sick siblings. The church was a

two-block walk away from the family's home. K.P., then age 11, and N.P., then age 13, were observed messing around and playing during church, which resulted in another churchgoer reporting the disruption to Lester before they got home.

According to K.P., Lester immediately instructed him to go into Lester's bedroom. K.P. said he knew he was sent to Lester's room because he had been acting inappropriately during the church service. Lester then entered alone and directed him to remove his pants and underwear and to bend over the bed. K.P. said Lester then spanked him with a belt 30 times on his back and upper buttocks during the course of a few minutes. At one point during the spanking, K.P. fell from the bed onto the floor. K.P. said he was screaming and crying the whole time. On a scale from 1 to 10--0 being no pain and 10 being the worst pain imaginable--K.P. ranked the pain as being an 8. He said there was no pain afterward, however.

Exhibits 4 through 11 show K.P.'s injuries. K.P. said his arms were bruised when he put his hand behind his back, attempting to protect himself from the spanking. K.P. testified that only Lester and he were in the bedroom and that his mother never entered. He also said neither his mother nor Lester asked him about his church behavior prior to his punishment. K.P. acknowledged that he had previously estimated he was hit 20 times when he spoke with the deputy county attorney.

According to K.P.'s mother, Deanne Wagner, Lester and she sat down with K.P. and N.P. in the living room when they returned from church and discussed their reported misbehavior. Deanne said Lester then sent N.P. to his room and took K.P. into his bedroom about ten feet away from where she was sitting in the living room. Lester left the door cracked open, which allowed her to see inside. Deanne said Lester then spanked K.P. three times with a belt while he was fully clothed. She then entered and told Lester something to the effect of "That's enough" because she felt that K.P. had been sufficiently disciplined. While she never heard screaming or crying, she said K.P. did leave the bedroom looking upset.

Deanne said she checked on K.P. that night and did not see any marks, bruises, cuts, or bleeding. She did not notice bruises on K.P.'s arm, noting that he typically wore long-sleeved shirts. Additionally, Deanne said that K.P. did not have trouble sitting through dinner that night and did not require any Advil or other medication. K.P. did not complain and did not go to a doctor.

Deanne testified that Lester and she had been married for 5 years and that K.P. and N.P. were her children from a previous relationship. They have lived together since Deanne and Lester married and also live with the two children Deanne and Lester have had together. Deanne said that Lester was like a father to K.P. and was in a position of responsibility and supervision over him, which included punishing him.

Deanne said K.P. had a history of behavioral problems, including stealing, lying, not listening, and not coming home when he was told. K.P.'s stealing had resulted in police involvement. Deanne said she had enrolled K.P. in counseling related to his misbehavior on multiple occasions.

On February 6, 2017, K.P. went to his school counselor's office and reported what had happened the day before. Patrick Neilly, the counselor, said it was the first time K.P. had been to his office although Neilly knew of him. Even though Neilly had never been personally involved in any disciplinary issues with K.P., he said that K.P.'s name occasionally came up in meetings in

relation to students talking during class or causing other classroom disruptions. Following protocol, Neilly took K.P. to speak with the principal and called the police following K.P.'s report.

When John Winter, a Lincoln police officer, arrived, K.P. showed them numerous bruises on his lower back and arm. Winter described K.P. as having "semi-fresh bruising, kind of long -- longer and slimmer." Neilly observed large purple bruises covering K.P.'s lower back. Winter photographed K.P.'s injuries and noted that his skin was broken in some areas, causing scabbing. K.P. acknowledged that he told Winter he could not remember how many times Lester spanked him and did not tell Winter what he was wearing or that he was crying and screaming.

Winter left the school and went to the family's home that afternoon and spoke with Deanne. Deanne admitted in her testimony that she initially told Winter that Lester had not spanked or physically punished K.P. due to nervousness when police showed up. Later in the interview, Deanne did acknowledge that Lester physically disciplined K.P. She also told Winter that she tried to stop Lester from using physical discipline but was unsuccessful.

Winter returned to the Wagner home around 7 that evening and spoke with Lester. Lester denied physically assaulting K.P. or using any type of belt to discipline his children. Lester told Winter that he sent K.P. to his bedroom after hearing about his misbehavior at church but did nothing else. Lester said he did not know how K.P.'s injuries were caused and opined that K.P. may have injured himself in order to get Lester into trouble. Winter issued Lester a child abuse citation. Winter did not remove K.P. from the home, however, because he determined that K.P. was not in immediate danger based on his conversation with Deanne. Winter described removal as an extreme measure that was not warranted by the circumstances.

At the time of the trial in this matter, both K.P. and N.P. had moved out of the family home and were living with Deanne's niece. That move was a personal family decision and not the result of a court order.

Trial was held on June 14, 2017. K.P., Deanne, Neilly, and Winter testified in the State's case in chief. No additional witnesses were called by Lester. Following trial, the jury convicted Lester of negligent child abuse in violation of § 28-707. The county court ordered that a presentence investigation be completed. Then, on September 1, 2017, the county court sentenced Lester to 180 days' imprisonment.

Lester appealed, arguing the county court erred by convicting him based on insufficient evidence and by imposing an excessive sentence. The district court for Lancaster County held a hearing on Lester's appeal on December 14, 2017. After reviewing the witnesses' testimony and trial exhibits, the district court reasoned there was sufficient evidence to support the jury's verdict that Lester was guilty of negligent child abuse beyond a reasonable doubt. Additionally, the district court held the county court had not abused its discretion in sentencing Lester to 180 days' imprisonment. The district court noted that the county court had reviewed the PSI, witnessed Lester's demeanor and attitude during trial, and heard the evidence of K.P.'s injuries. The district court affirmed Lester's conviction and sentence on December 16.

Lester now appeals.

- 3 -

ASSIGNMENTS OF ERROR

Lester asserts that the district court erred by affirming his conviction of negligent child abuse based on insufficient evidence and by affirming the imposition of an excessive sentence.

STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Todd*, 296 Neb. 424, 894 N.W.2d 255 (2017). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. Appellate courts independently review questions of law in appeals from the county court. *Id*. When deciding appeals from criminal convictions in county court, appellate courts apply the same standards of review that they apply to decide appeals from criminal convictions in district court. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014).

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limit absent a trial court's abuse of discretion. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013). Where a sentence within the statutory limit is alleged on appeal to be excessive, an appellate court must determine whether the trial court abused its discretion in applying the relevant factors and any other applicable legal principles. *Id*.

ANALYSIS

*Sufficiency of Evidence.*

Lester contends that there was insufficient evidence to convict him of negligent child abuse because there was not evidence that his disciplining of K.P. was designed or known to cause a substantial risk of death, serious bodily harm, disfigurement, extreme pain or mental distress, or gross degradation. Additionally, he contends that he acted as a parent in reasonably, not excessively, punishing K.P. under the circumstances. On the other hand, the State argues that there was sufficient evidence to support the conviction and that Lester is actually asking us to reweigh the evidence and decide differently than the jury which convicted him. We find that the evidence presented, when taken in the light most favorable to the State, was sufficient to support a conviction for negligent child abuse.

In relevant part, the negligent child abuse statute provides that a person commits a Class I misdemeanor when he negligently causes a minor child to be either (a) placed in a situation that endangers his or her life or physical or mental health or (b) cruelly confined or cruelly punished and the offense does not result in serious bodily injury. § 28-707(1)(a), (1)(b), and (3). Under Neb. Rev. Stat. § 28-1413 (Reissue 2016), the use of force by a parent, guardian, or other person similarly responsible for the care and supervision of a minor is justifiable if the force is used to punish the minor's misconduct and is not designed to cause, or known to create, a substantial risk of death, serious bodily harm, disfigurement, extreme pain or mental distress, or gross degradation. Whether punishment inflicted upon a child by a parent or one standing in relation of parent was, under all circumstances and surroundings, reasonable or excessive is a question of fact to be determined by the jury. *State v. Beins*, 235 Neb. 648, 456 N.W.2d 759 (1990).

On June 14, 2017, the jury found Lester guilty of committing child abuse negligently and not resulting in serious bodily injury. The evidence presented at trial was sufficient to warrant the jury's verdict. Taken in a light most favorable to the State, the evidence presented at trial showed that Lester instructed 11-year-old K.P. to remove his pants and underwear and then struck him with a belt an estimated 30 times in response to reports that he had misbehaved during church. K.P. cried and screamed throughout the incident, falling to the floor at one point and attempting to stop the spanking by putting his arm behind his back. This spanking caused K.P.'s skin to break, bleed, and scab. The photographs received into evidence demonstrate that the blows resulted in myriad bruising and scabbing to K.P.'s lower back, upper buttocks, and arm.

Although the above evidence, which was largely supplied by K.P.'s testimony, was challenged by Deanne's testimony, we do not resolve conflicts in the evidence or reweigh witnesses' credibility. However, we do note that a rational jury had reason to question the veracity of Deanne's testimony. Deanne initially told Winter that Lester had not physically disciplined K.P. She later told Winter that she tried to stop Lester but was unsuccessful, and then she testified at trial that she told Lester to stop after he had spanked K.P. three times and that Lester then stopped. Moreover, Deanne indicated that she had checked on K.P. later in the evening after he was spanked and noticed no bruising or behavior that indicated he was in pain. Neilly and Winter testified that K.P. exhibited fresh bruising on his lower back, upper buttocks, and arms when they saw him the next day and as shown in exhibits 4 through 11.

The jury was presented with sufficient evidence to support its finding that Lester either placed K.P. in a situation that endangered his life or physical or mental health or cruelly confined or punished K.P. and that the offense did not result in serious bodily injury to K.P. Moreover, there was sufficient evidence to support the jury's finding that Lester's use of force was not justified or reasonable under the circumstances. Based on the foregoing, we agree with the district court that Lester's claim of insufficient evidence is without merit.

*Excessive Sentence.*

Lester argues his sentence of 180 days' imprisonment was excessive because the county court failed to consider favorable factors that weighed against imprisonment such as the likelihood that he would respond to probationary treatment and unlikelihood that he would commit another crime. The State argues that the county court's sentence was not excessive as it sentenced Lester

within the statutory range after properly considering the presentence investigation report, noting Lester's assaultive history, and considering the exhibits that depicted K.P.'s injuries. We find that the county court did not abuse its discretion in sentencing Lester to 180 days' imprisonment.

Lester was convicted of negligent child abuse in violation of § 28-707(1), which is a Class I misdemeanor under § 28-707(3). A Class I misdemeanor is punishable by not more than 1 year's imprisonment, or a $1,000 fine, or both. Neb. Rev. Stat. § 28-106(1) (Reissue 2016). There is no minimum sentence for a Class I misdemeanor. *Id*. Following Lester's conviction, he was sentenced to 180 days' imprisonment.

Because the sentence imposed falls within the statutory requirements, we consider only whether the county court abused its discretion in imposing this sentence. See *State v. Dixon, supra*. A judge should consider the following factors when imposing a sentence: (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, (6) motivation for the offense, (7) nature of the offense, and (8) the amount of violence involved in the crime's commission. *Id.* A trial court abuses its discretion when a sentence is based upon an untenable, unreasonable rationale or is an affront to justice, conscience, reason, and evidence. *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011).

In sentencing Lester to 180 days' imprisonment, the county court specifically considered the presentence investigation report (PSI), Lester's history of assaultive behavior, prior convictions and sentences, and the specific circumstances of this case. As part of the PSI, an LS/CMI evaluation was completed, and Lester scored in the medium-low risk range to reoffend with an overall score of 13. He scored at very low risk in the education, employment, and alcohol/drug problem categories as he has a master's degree and was accepted into a doctoral degree program and was employed at the time of the PSI interview. Lester scored at low risk in the procriminal attitude/orientation and antisocial pattern categories. He scored at medium risk in the family/marital, leisure/recreation, and companions categories.

However, the PSI shows that Lester has been previously convicted of violating a protection order, disturbing the peace on two separate occasions, and injuring or destroying another's property on two separate occasions.

Most significantly, Lester has prior convictions for manslaughter, using a deadly weapon to commit a felony, and assault. In 1999, Lester was convicted of manslaughter and using a deadly weapon to commit a felony and was sentenced to terms of imprisonment of 10 to 20 years and 7 to 12 years, respectively. He was more recently convicted of assault in 2013 and sentenced to 72 hours' imprisonment. According to the argument of the State at sentencing, the victim of this assault was also K.P. and the facts of that case involved physical discipline.

The county court noted while sentencing Lester that he initially told police no physical discipline occurred and has not admitted to spanking K.P. at all: "He hasn't taken any responsibility for this." Moreover, the court called the photographs of K.P.'s injuries that were admitted into evidence "appalling" and not indicative of a lone moment of rage. The court also stated that a lesser sentence would depreciate the offense's seriousness and promote a disrespect for the law.

The county court did not abuse its discretion and impose an excessive sentence when it sentenced Lester to 180 days' imprisonment. The sentence imposed fell squarely within the

statutory sentencing range. Based on our review of the record, the county court considered only proper sentencing factors and did not base its sentence on an untenable or unreasonable rationale. We therefore agree with the decision of the district court, which rejected Lester's claim of an excessive sentence.

## CONCLUSION

For the reasons stated above, we conclude that Lester's conviction for negligent child abuse was not based on insufficient evidence and that his sentence of 180 days' imprisonment was not an excessive sentence. Therefore, we affirm the district court's order affirming the verdict rendered in the county court and the sentence imposed therein.

AFFIRMED.